**Eugene DANIELS and Neal Moser, Appellants,**

**v.**

**CDB BELL, LLC, d/b/a Pizza Magia of Okolona; DMR Pizza, Inc., d/b/a Pizza Magia of Okolona; Ramiz Pour-Azar; Pizza Magia International, LLC; PM Enterprises, LLC, Appellees.**

**and**

**CDB Bell, LLC, d/b/a Pizza Magia of Okolona, Cross-Appellants,**

**v.**

**Eugene Daniels and Neal Moser, Cross-Appellees.[1]**

**Nos. 2007-CA-001608-MR, 2007-CA-001692-MR.**

Court of Appeals of Kentucky.

July 17, 2009.

Discretionary Review Denied by Supreme Court Jan. 13, 2010.

---

1. Notice of Appeal incorrectly shows Eugene Daniels and Neal Moser as the cross-appellants.

Todd V. McMurtry, Kevin F. Hoskins, Crestview Hills, KY, for Appellants and Cross–Appellees.

Mark T. Hayden, Cincinnati, OH, for Appellees and Cross–Appellants.

Before COMBS, Chief Judge; CAPERTON and CLAYTON, Judges.

## OPINION

CLAYTON, Judge.

Dr. Neal Moser and Eugene Daniels (appellants/cross-appellees) appeal from a jury verdict in favor of CDB Bell, LLC, (appellee/cross-appellant) piercing the corporate veil of DMR Pizza, Inc. and imposing personal liability on the appellants for a default judgment against DMR Pizza, Inc. The appellants argue that the evidence presented at trial did not support piercing the corporate veil and, therefore, no basis exists to hold them liable for a judgment against a now defunct corporation. Further, on the cross-appeal, CDB Bell, LLC (CDB Bell) appeals the trial court's granting appellants' motion for a directed verdict on the fraud and punitive damages claim. Appellee asserts that sufficient evidence exists to create a genuine issue of material fact regarding whether appellants participated in or condoned the fraudulent transfer of secured assets of the appellee's restaurant to an entity called PM Enterprises, LLC (PME).

## FACTUAL BACKGROUND

On May 18, 2001, CDB Bell purchased a Pizza Magia store (the Restaurant) located on Preston Highway in Louisville, Kentucky. Charles and Diane Bell, husband and wife, were the sole owners of CDB Bell. After operating the store for one year, the Bells gave notice to Pizza Magia's corporate entity that they intended to sell the Restaurant's assets.

At about the same time period, Moser and Daniels plus two other individuals, Ramiz Pour–Azar and Jeff Nelson,[2] invested in a Kentucky Corporation called DMR Pizza, Inc. (DMR Pizza). The parties formed DMR Pizza for the purpose of owning and operating Pizza Magia franchises. The three investors, a doctor and two businessmen from Northern Kentucky, respectively, contributed capital to the venture. Pour–Azar, an individual with extensive knowledge and experience in pizza restaurant management, was to contribute his time and knowledge—that is, "sweat equity,"—by managing the day-to-day operations of the pizza business. Pour–Azar was president, and according to the corporate documents, Moser was a vice president, director and shareholder of DMR Pizza; and, Daniels was a director and shareholder. Moser, Daniels, and Nelson had no experience in the restaurant business and no desire to participate in the franchise operation.

DMR Pizza, through Pour–Azar, on May 1, 2002, agreed to purchase the CDB Bell Restaurant's assets. Pour–Azar and the Bells agreed to a total purchase price of $225,000, of which DMR Pizza would pay $35,000 down and finance the remaining $190,000 over a period of 60 months. To secure the debt, Pour–Azar signed a promissory note and guarantees in his personal capacity and as president of DMR Pizza. Neither appellant signed personal guarantees to secure the debt. Indeed, both appellants testified that they did not know about Pour–Azar's agreement to purchase the Bells' restaurant until this litigation ensued.

When the transaction was set up, Bell stated at trial that CDB Bell did not perform due diligence on Pour–Azar before entering into the transaction. The security agreement gave the Bells a security interest in the equipment, supplies, and materials of the Restaurant and provided that DMR Pizza could not transfer the assets of the Restaurant without prior written consent of the Bells. The appellants, however, were unaware of Pour–Azar's agreement to purchase the Bells'

---

**2.** The amended complaint did not join Nelson as a party-defendant.

Restaurant. As a matter of fact, the evidence of record reveals that the appellants were unaware of many of Pour–Azar's activities, including that he stole from the company and entered many transactions without their approval.

On that same day, May 1, 2002, within a few hours, DMR Pizza transferred all the assets of the Restaurant to PME. Obviously, the transfer did not comport with the security agreement. On this same day, PME entered into a new franchise agreement with the franchisor, Pizza Magia, for the transferred Restaurant. Moreover, PME borrowed $200,000 from Pizza Magia to pay for the store and granted Pizza Magia a security interest in the assets of the Restaurant.

Next, DMR Pizza defaulted on the promissory note and ceased operations. Later, PME defaulted on the terms of its franchise agreement with Pizza Magia and went out of business. Pizza Magia exercised its option on December 16, 2002, to take the assets of the restaurant and paid nothing for them. Some testimony was provided that the Bells' creditor, Stock Yards Bank, was notified about the assets. Additionally, by the time the assets were taken, the value of the assets was questionable. But, ultimately, CDB Bell received nothing for its security interest in the assets of DMR Pizza and Pizza Magia went out of business.

## PROCEDURAL BACKGROUND

On April 22, 2003, CDB Bell brought this action against DMR Pizza, PME, and Pour–Azar to collect on the amounts due and owing under the note and to execute on the assets of the Restaurant. At a later date, CDB Bell brought this action against Pizza Magia to recover the secured assets taken by Pizza Magia.[3] On July 24, 2003, the trial court entered a default judgment against the defunct DMR Pizza and Pour–Azar for $192,188.79 plus post-judgment interest at 12 percent compounded annually. The trial court also awarded CDB Bell attorney fees in the amount of $648.93. Unfortunately, DMR Pizza was a defunct corporation, and to date, CDB Bell has collected nothing against the judgment. Furthermore, CDB Bell has not been able to obtain service on Pour–Azar or PME. Initially, Moser and Daniels were not named parties to this action, but on March 1, 2006, CDB Bell amended the suit to file claims against them for fraud and to pierce the corporate veil.

Debts existed from CDB Bell's original purchase of the Restaurant, and these debts were personally guaranteed by the Bells. The Bells borrowed money from Stock Yards Bank to buy the Restaurant and personally guaranteed the loan. In October 2003, Stock Yards Bank brought an action to collect the debt against the Bells, and the bank obtained a judgment in March 2005. Following the judgment, the bank foreclosed on the Bells' home and personal assets. Thereafter, on June 6, 2005, the Bells filed for Chapter 7 bankruptcy, but CDB Bell did not file for bankruptcy. In the bankruptcy petition, the Bells disclosed and listed the default judgment against DMR Pizza as an account receivable with a market value of $250,000. On September 14, 2005, the Bells were granted a Chapter 7 bankruptcy discharge, and the case was closed.

Then, on December 5, 2005, after the bankruptcy case had been closed, CDB Bell took the depositions of Moser and Daniels. While deposing them, CDB Bell discovered that alleged grounds existed for

---

**3.** On April 30, 2007, the trial court entered a default judgment against Pizza Magia, which is now a defunct corporation. Appellee has collected nothing on this judgment.

piercing the corporate veil of DMR Pizza and holding Moser and Daniels individually liable for the debts of DMR Pizza. On March 2, 2006, CDB Bell moved the trial court for permission to file an amended complaint against appellants. The amended complaint sought to pierce the corporate veil and collect the judgment from the appellants, individually, as officers, directors, and shareholders of DMR Pizza. The trial court granted the motion to amend the complaint.

Then, CDB Bell filed another motion to amend the complaint, which in addition to the claim for piercing the corporate veil, also included a claim for fraud. The trial court also granted this motion. Following the trial court's action, Moser and Daniels filed a motion to dismiss the amended complaint on April 27, 2006. The appellants' motion to dismiss was converted, on December 6, 2006, to a motion for summary judgment. Ultimately, the trial court denied the motion for summary judgment and the appellants' motion to dismiss the fraud claim, finding that CDB Bell had presented affirmative evidence creating genuine issues of material fact as to whether DMR Pizza was merely a shell corporation and the appellants should be held personally liable on the note.

The parties tried the case before a jury from April 30, 2007, to May 2, 2007. Before the trial court empanelled the jury, it heard oral arguments on appellants' motion to dismiss for lack of standing. The trial court overruled the motion and empanelled the jury. After the appellee presented its case-in-chief, the appellants moved for a directed verdict on both piercing the corporate veil and the fraud claims. The trial court entered a directed verdict against CDB Bell on its fraud case and the alter-ego theory of piercing the corporate veil. Consequently, appellee's case was narrowed to a single issue: whether Moser and Daniels should be held personally liable for DMR Pizza's debt based on the instrumentality theory of piercing the corporate veil. Appellants' counsel objected because of its contention that a claim for piercing the corporate veil could not survive without some evidence that the appellants participated in a wrongful act. The trial court allowed the case to proceed. Later, appellants' counsel raised a similar argument about the necessity for appellants to participate in wrongful acts and argued that this reasoning must be a part of the jury instructions. Nonetheless, the trial court rejected appellants' proffered instructions.

On May 2, 2007, the jury, after deliberating for less than a half-hour, returned a unanimous verdict in favor of CDB Bell on the instrumentality theory of piercing the corporate veil. The jury, however, was not given an instruction on damages. Thereafter, the trial court ordered appellants to repay the entire amount of the July 24, 2003, default judgment plus interest. Based on these findings of fact, a trial order, verdict and judgment was entered on May 7, 2007, holding Moser and Daniels liable in their individual capacity for the July 24, 2003, default judgment plus interest. On May 17, 2007, appellants filed a motion to set aside or motion for a new trial, which was denied by the trial court. This appeal and cross-appeal follow.

## ANALYSIS

### 1. Standard of Review

Questions of law are reviewed anew by this Court. *Hardin County Schools v. Foster*, 40 S.W.3d 865, 868 (Ky.2001). In contrast, our review of questions of fact is limited to the deferential standard. *Faust v. Commonwealth*, 142 S.W.3d 89, 96 (Ky. 2004). When there are questions of fact, or mixed questions of law and fact, we

review the circuit court's decision pursuant to the clearly erroneous standard. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky.2003). Under this standard, this Court will only set aside the findings of fact of the circuit court if those findings are clearly erroneous. The dispositive question is whether the findings are supported by "substantial evidence." *Id.* "[S]ubstantial evidence" is "[e]vidence that a reasonable mind would accept as adequate to support a conclusion" and evidence that, when "taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men." *Id.* (Internal citations omitted). Therefore, here, we will review questions of law under the de novo standard and questions of fact under the clearly erroneous standard.

2. Right to Jury Trial

■ Kentucky courts have determined that "[t]he right to trial by jury has occupied a central place in our jurisprudence." *B.F.M. Bldg., Inc. v. Trice*, 464 S.W.2d 617, 619 (Ky.1971). And, "[t]he fundamental right to a trial by jury, when a proper demand is made, is recognized by the Kentucky Constitution in Section 7, and incorporated into the Kentucky Rules of Civil Procedure. . . ." *Whitfield v. Cornelius*, 554 S.W.2d 870, 871 (Ky.App.1977). But in civil cases, Kentucky law recognizes exceptions to the right to a jury, including causes of action at common law that would have been regarded as arising in equity rather than law. *Reese's Administrator v. Youtsey*, 113 Ky. 839, 69 S.W. 708 (1902); *see Steelvest, Inc. v. Scansteel Service Center, Inc.*, 908 S.W.2d 104, 108 (1995). If the nature of the issues presented is essentially equitable, no jury trial is available. If the issues are predominantly legal in scope, however, a right to a jury trial exists. *See Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814 (Ky.1992).

■ Kentucky law further instructs that "[w]here both legal and equitable issues are involved in a lawsuit, the legal issues should be tried by a jury if proper demand is made." *Brandenburg v. Burns*, 451 S.W.2d 413, 414 (Ky.1969). *See also Johnson v. Holbrook*, 302 S.W.2d 608 (Ky.1957). Notably, the Court, while stating that the legal issues should be tried by a jury, makes no suggestion that the equitable issues should be tried by a jury.

■ Kentucky Rules of Civil Procedure (CR) 39.01 recites the limitations upon trial by jury:

When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless (a) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury, or (b) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of the issues does not exist under the Constitution or Statutes of Kentucky.

Accordingly, in Kentucky, equitable issues are not triable by juries unless agreed to by the parties. *Elliott v. Pikeville National Bank & Trust Co.*, 278 Ky. 325, 128 S.W.2d 756 (Ky.1939). *See also Kelley v. Nationwide Auto Restoration, LLC*, 246 S.W.3d 470 (Ky.App.2007); *Maloney v. St. Louis Mut. Ins. Co.*, 1873 WL 11192 (Ky. 1873). Thus, while the state constitution protects the right to trial by jury, in cases of an equitable nature, a remedy of law is inadequate and does not afford justice. Thus, the question is narrowed to whether the issue of piercing the corporate veil arises in law or equity.

The issue of whether a claim of "piercing the corporate veil" is entitled to a jury

trial is one of first impression in Kentucky. Granted, the doctrine of piercing the corporate veil is recognized as being an equitable remedy, not a cause of action unto itself, which is used as a means of imposing liability. *See* William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations,* § 41.29 (2006). Around the country substantial disagreement exists as to whether veil piercing is an equitable or legal doctrine. The significance of the issue, of course, is that equitable remedies need not be tried before a jury but parties subject to legal remedies generally are entitled to trial by jury. *See Wm. Passalacqua Builders, Inc. v. Resnick Developers South Inc.,* 933 F.2d 131, 136 (2d Cir. 1991) (veil piercing has roots in both law and equity, so it was proper for trial court to submit issue to jury); *American Protein Corp. v. AB Volvo,* 844 F.2d 56, 59 (2d Cir.1988) (veil piercing is an equitable remedy but issue is normally submitted to a jury); *compare United States v. Golden Acres, Inc.,* 684 F.Supp. 96, 103 (D.Del. 1988) (veil piercing is equitable remedy and affords no right to jury trial), *and Dow Jones Co. v. Avenel,* 151 Cal.App.3d 144, 148, 198 Cal.Rptr. 457, 460 (Cal.App. 1984) (same).

Notwithstanding the different jurisdictional decisions about the right to a jury in veil piercing situations, trial courts are certainly allowed to have a jury trial on the legal issues and then the court decide the equitable question of whether to disregard the corporate entity. For instance, the Court stated clearly that in a reformation of a written instrument case, which is an equitable action, the equitable question was to be determined by the court without a jury. *Johnson v. Holbrook,* 302 S.W.2d 608 (Ky.1957). Also, the separation in a trial between jury determinations and judicial decisions is referenced in CR 39.01(b). Historically, before the adoption of CR 39.01(b), an action at law was a jury action

and a suit in equity was a nonjury action. In other words, causes of action historically legal are triable by jury and causes of action historically equitable are triable by the court. If both legal and equitable issues are joined in a single cause of action, the appropriate mode of trial must be followed as to each. And, in fact, under CR 39.03, if desired, an advisory jury is available for actions not triable of right by a jury.

■ Our analysis necessitates that we review the concept of corporations. In general, a corporation will be looked upon as a separate legal entity. But, when the idea of a separate legal entity is used to justify wrong, protect fraud or defend crime, the law will regard the corporation as an association of persons. *Dare To Be Great, Inc. v. Com., ex rel. Hancock,* 511 S.W.2d 224, 227 (Ky.1974). Therefore, despite the fact that a corporation is usually recognized as an entity, distinct from its shareholders, officers, and directors, "specific, unusual circumstances" prevent the rule of limited liability from applying. *Zubik v. Zubik,* 384 F.2d 267, 273 (3d Cir. 1967).

■ In order to resolve whether "piercing the corporate veil" is an equitable action for judicial determination, it is important to review the concept and theories available for "piercing the corporate veil." First, as previously stated, a corporation is a separate entity from its shareholders. Continuing the inquiry, we cite the definition of "piercing the corporate veil" in 18 *C.J.S. Corporations* § 14 (2008):

the judicial act of imposing personal liability on otherwise immune corporate officers, directors, and shareholders for the corporation's wrongful acts, and certain elements must be established[.]

Interestingly, the text refers to "the judicial act." Further, Kentucky jurispru-

dence recognizes three basic "theories" to "pierce the corporate veil" and hold the shareholders of a corporation responsible for corporate liabilities. As described in *White v. Winchester Land Development Corp.*, 584 S.W.2d 56, 61 (Ky.App.1979), the theories are "labeled (1) the instrumentality theory; (2) the alter ego theory; and (3) the equity formulation."

In this case, the trial court granted a directed verdict on the alter-ego theory and narrowed the issue for the jury to whether the instrumentality theory was available to pierce the corporate veil.

> Under the instrumentality theory three elements must be established in order to warrant a piercing of the corporate veil: (1) that the corporation was a mere instrumentality of the shareholder; (2) that the shareholder exercised control over the corporation in such a way as to defraud or to harm the plaintiff; and (3) that a refusal to disregard the corporate entity would subject the plaintiff to unjust loss. *Id.*

In order to ascertain whether the corporate form should be disregarded, courts weigh various factors, including whether the corporate form was abused and whether the form was used to perpetrate a fraud.

Further guidance on whether the issue is for judicial or jury determination is provided in *Poyner v. Lear Siegler, Inc.*, 542 F.2d 955, 959 (6th Cir.1976), wherein the federal court explained:

> Whether it is appropriate to disregard the corporate entity, and whether Poyner would have to litigate both liability for the injuries and LSI's liability for Erma's obligations in order to recover from LSI, are clearly questions of law. Whether an arrangement works an "unfair" hardship is similarly a question of law. If a determination concerns whether the evidence showed that something

occurred or existed, it is a finding of fact. However, if a determination is made by processes of legal reasoning from, or of interpretation of the legal significance of, the evidentiary facts, it is a conclusion of law. *Galena Oaks Corp. v. Scofield,* 218 F.2d 217, 219 (5th Cir. 1954). *See also Kippen v. Am. Automatic Typewriter Co.,* 324 F.2d 742, 745 (9th Cir.1963) (whether there was "good cause" to discharge); *Campbell Soup Co. v. Wentz,* 172 F.2d 80 (3rd Cir.1948) (whether carrots are "unique," permitting the remedy of specific performance). The issue whether a corporate arrangement works a hardship which is "unfair," and which therefore warrants denial of corporate entity treatment, is a question about the legal consequences which follow from the arrangement. It is therefore a conclusion of law.

To summarize, the *Poyner* Court reasoned that a decision about whether to disregard the corporate entity and whether the issue is one of fairness or equity are questions for the court.

Given the above legal reasoning, we find that the action before us involves an equitable remedy and is not one at law or one for damages. Apparently, the rationale behind CDB Bell's request for this action is that such relief promotes justice and equity. Thus, it follows that their request to pierce the corporate veil is an exercise of equitable power. Moreover, the pleadings, which ask to pierce the corporate veil, are requesting the enforcement of a default judgment not the determination of the amount of damages.

■ In addition, to ascertain the right to a jury trial requires an appraisal of the pleadings. As *Brandenburg v. Burns,* 451 S.W.2d 413 (Ky.1969), provides, it is the pleadings—not the proof—which is determinative of whether legal or equitable is-

sues are involved. Here, the jury did not decide money damages, typically a legal issue for juries. This factor supports the conclusion that the case herein is one for equity. We can only conjecture about the impact on the jury when they reached the verdict that they had no concrete information as to the result of the decision to pierce the corporate veil. In other words, the jury did not know exactly the previous judgment amount, and hence, deliberated in a vacuum. Moreover, because the jury was unaware of the amount of the judgment and the implication of holding the appellants solely liable for CDB Bell's losses, Pour–Azar (the other shareholder in DMR Pizza), Pizza Magia, and even Bell himself, were not part of the calculus of damages. This result does not seem an equitable one.

Support for the proposition that the issue of veil piercing is an equitable matter is found in other sources: *See Fletcher Cyclopedia of Law of Corporations* § 41.29 at p. 177 (2006) stating:

> Since the doctrine of piercing the corporate veil is an equitable one that is particularly within the province of the trial court, some courts take the position that the right to a jury trial on the issue of piercing the corporate veil does not exist. (internal footnotes omitted).

*See also Bangor Punta Operations, Inc. v. Bangor & A.R. Co.,* 417 U.S. 703, 713, 94 S.Ct. 2578, 2584, 41 L.Ed.2d 418 (U.S.Me. 1974) (stating that "courts of equity" decide whether to pierce the corporate veil); *Koch Refining v. Farmers Union Cent. Exchange, Inc.,* 831 F.2d 1339, 1345 (7th Cir.1987) (stating that "disregard of the corporate entity is essentially an equitable doctrine"); *In re Air Crash Disaster at Stapleton Intern. Airport, Denver, Colo.,* 720 F.Supp. 1467, 1484 (D.Colo.1989) (stating that "the ultimate decision of whether to disregard the corporate form ... lies in

equity"); *United States v. Golden Acres, Inc.,* 684 F.Supp. 96, 103 (D.Del.1988) (concluding that, under the law of Delaware, piercing the corporate veil is equitable relief for which a federal jury trial is unavailable); and *International Financial Services Corp. v. Chromas Technologies Canada, Inc.,* 356 F.3d 731, 737 (7th Cir. 2004) (opining that "[i]t follows that veil-piercing must be an exercise of equitable power.").

■ We believe that the decision as to whether to pierce the corporate veil is an equitable one to be decided by the trial court and not the jury. Further, as a reviewing court, we are not bound by the trial court's decision on questions of law. "An appellate court reviews the application of the law to the facts and the appropriate legal standard *de novo*." *Carroll v. Meredith,* 59 S.W.3d 484, 489 (Ky.App.2001). Consistent with this principle, then, our function as the reviewing court is to answer the strictly legal and equitable question of what actions necessitate piercing the corporate veil under the instrumentality theory and whether the appellants' activities met this threshold.

■ To reiterate, the three prongs of the instrumentality theory of piercing the corporate veil that must be established in order to warrant piercing are that the corporation was a mere instrumentality of the shareholder; that the shareholder exercised control over the corporation in such a way as to defraud or to harm the plaintiff; and that a refusal to disregard the corporate entity would subject the plaintiff to unjust loss. *See White,* 584 S.W.2d at 61.

With regard to the first prong, unquestionably DMR Pizza appears to have been used only as an instrument for the shareholders to make investments. Indeed, nothing on the record indicates that corporate formalities had been followed.

The key issue, however, is the second prong of the theory—whether Moser and Daniels exercised control over the corporation in such a way as to defraud or harm the plaintiff. Granted, the jury instructions were written to eliminate "to defraud," but even with this instruction's legal rendering of the instrumentality theory, it still remains for CDB Bell to prove that Moser and Daniels exercised control over DMR Pizza in such a way as to harm CDB Bell. CDB Bell was unable to show any participation by the appellants or activity by them which shows that they exercised any control over the corporation much less any active role in harming CDB Bell. Having determined that the appellants did not exercise control or actively participate in harming CDB Bell, it cannot be said, with reference to the third prong, that a refusal to pierce the corporate veil subjected CDB Bell to an unjust loss. While the losses incurred by CDB Bell are most definitely unfortunate, without any connection between CDB Bell's loss and the appellants, no further injustice occurs in deciding the corporate veil may not be pierced. Thus, we vacate the Jefferson Circuit Court jury verdict, reverse the judgment and hold that equity demands, in this case, that the corporate veil not be pierced.

### 3. Standing

Appellants contend that, based on the fact that a debtor must fully inform a bankruptcy trustee of an asset in order for the trustee to abandon the asset, and that, because the Bells did not inform the trustee, the Bells lack standing to bring the suit against the appellants. In fact, the Bankruptcy Code requires debtors to file a schedule of assets. 11 U.S.C.A. § 521. Furthermore, by operation of 11 U.S.C.A § 541, the assets on the schedule become the property of the bankruptcy estate. Yet, a longstanding principle of bankruptcy law allows the trustee to abandon property if such pursuit is burdensome or inconsequential. *Brown v. O'Keefe*, 300 U.S. 598, 57 S.Ct. 543, 81 L.Ed. 827 (U.S.1937). Language regarding this principle is found in 11. U.S.C.A. § 554(c), wherein it says that "any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor . . . ." And if an asset (including judgments), which preexisted the filing of the bankruptcy petition, is abandoned by the trustee, then it reverts back to the debtor. The debtor then has standing to pursue collection of the judgment. *Starrett v. Starrett*, 225 N.J.Super. 150, 541 A.2d 1119 (1988).

In the case at hand, we agree with the trial court's decision, which ruled that the Bells adequately listed the judgment on the bankruptcy petition. In the bankruptcy schedules, the Bells disclosed that DMR Pizza defaulted on a $250,000 judgment and listed it as an accounts receivable. Later, Mr. Bell gave a statement to the trustee, which disclosed the debt and the likelihood of collecting it. Although the Bells' disclosure of the judgment may not have been artfully done, it is apparent that there was no intent to conceal the asset. In addition, the record shows that they provided the trustee with enough information so that he could make a well-informed decision. The trustee decided *not to pursue* collection of the debt and granted the Bells a discharge. The bankruptcy case was closed on September 14, 2005. We agree with the trial judge's ruling that the Bells had standing to pursue the default judgment against DMR Pizza.

### 4. Cross–Appeal—Fraud

CDB Bell argues for a new trial on its claims for fraud and punitive dam-

ages. These claims were dismissed when the trial judge granted appellants' motion for directed verdict. When a directed verdict is appealed, the standard of review on appeal consists of two prongs. The prongs are: "a trial judge cannot enter a directed verdict unless there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ." *Bierman v. Klapheke*, 967 S.W.2d 16, 18–19 (Ky.1998). "A motion for directed verdict admits the truth of all evidence which is favorable to the party against whom the motion is made." *National Collegiate Athletic Ass'n By and Through Bellarmine College v. Hornung*, 754 S.W.2d 855, 860 (Ky.1988), citing *Kentucky & Indiana Terminal R. Co. v. Cantrell*, 298 Ky. 743, 184 S.W.2d 111 (1944).

■■■■ Clearly, if there is conflicting evidence, it is the responsibility of the jury, the trier of fact, to resolve such conflicts. Therefore, when a directed verdict motion is made, the court may not consider the credibility or weight of the proffered evidence because this function is reserved for the trier of fact. *National*, 754 S.W.2d at 860 (citing *Cochran v. Downing*, 247 S.W.2d 228 (Ky.1952)).

■■■■ In order to review the trial court's actions in the case at hand, we must first see whether the trial court favored the party against whom the motion is made, including all inferences reasonably drawn from the evidence. Second, "the trial court must determine whether the evidence favorable to the party against whom the motion is made is of such substance that a verdict rendered thereon would be 'palpably or flagrantly' against the evidence so as 'to indicate that it was reached as a result of passion or prejudice.'" If the answer to this inquiry is affirmative, we must affirm the trial court granting the motion for a directed verdict.

*Id.* Moreover, "[i]t is well argued and documented that a motion for a directed verdict raises only questions of law as to whether there is any evidence to support a verdict." *Harris v. Cozatt, Inc.*, 427 S.W.2d 574, 575 (Ky.1968). Further, "a reviewing court cannot substitute its judgment for that of the trial judge unless the trial judge is clearly erroneous." *Bierman*, 967 S.W.2d at 18.

■■■■ CDB Bell cites *Johnson v. Cormney*, 596 S.W.2d 23 (Ky.App.1979), for the proposition that it is well established in Kentucky that a party is liable in fraud for knowingly participating or condoning the selling and disposing of property for the purpose of defrauding creditors. A reading of the case shows that the actual issue was about the appropriateness of the jury instructions. The Court therein cautioned:

> While appellant did not preserve any assignment of error as to this instruction, we determine that the instruction, as given, was not likely to mislead the jurors in that it was clear that appellant's condoning of the acts of another had to be done both with his knowledge of those acts and with his intent to avoid the payment of mortgages or to cheat, hinder or delay creditors, including the appellees.

*Id.* at 26. The quotation illustrates the rationale behind the trial judge's grant of the directed verdict here. It must be proven that the appellants, Moser and Daniels, had knowledge of Pour–Azar's bad acts. In fact, no evidence has been provided that shows they had any knowledge of the questionable activities of DMR Pizza's president, Pour–Azar, in defrauding CDB Bell. No evidence directly connects or implicates the appellants in actively participating or ratifying his fraudulent acts. The only evidence given about the appellants concerns their general authori-

zations allowing Pour–Azar to manage and to develop the company's pizza business in which they had invested. The appellants, too, were deceived by him. Because the proffered evidence about appellants' activities is speculative, conjectural, or both, it is not sufficient to defeat the appellants' motion for directed verdict. We find no abuse of discretion by the trial judge in reaching the decision to grant the directed verdict on the fraud and punitive damages claim.

## CONCLUSION

For the foregoing reasons, the Jefferson Circuit Court's decision to grant the directed verdict on the fraud and punitive damages claim is affirmed, and the portion of the judgment wherein the jury found for CDB Bell on the issue of piercing the corporate veil is reversed.

ALL CONCUR.