# Toomey v. Graber et ux.

Nov. 9, 1945.

Duncan & Duncan for appellant.

E. Bertram for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This is an equity action filed by appellant in the Wayne circuit court against appellees to set aside as fraudulent a mortgage on two automobiles executed by appellee and defendant, George Graber, to his co-appellee, who was then Bess Gibson, but who later married him and is now, and was at the time of this trial, his wife.

The attacked mortgage was executed on July 6, 1944, and lodged for record on the same day and purported to secure an alleged indebtedness for $2,000 due Mrs. Graber nee Gibson which the mortgage recites was "due one year from date hereof with interest at six per cent. per annum from date until paid," notwithstanding it was for an alleged past consideration.

The action was brought under section 378.010, KRS, section 1906, Carroll's Statutes, and the petition averred

in the alternative that should the court not set aside the mortgage as fraudulent in its entirety, then its execution was a fraudulent preference under section 378.070, KRS, sections 1911, 1912 and 1917, Carroll's Statutes, since the consideration for the mortgage was an alleged pre-existing debt, if one at all, and the prayer of the petition was likewise in the alternative for relief applicable to each remedy. Following pleadings made the issue, and upon submission the court dismissed appellant's petition, to reverse which she prosecutes this appeal.

The nature of plaintiff's debt was a judgment for $1,000 which she obtained against defendant, George Graber, in November, 1944, in an action filed against him in August of the same year, but the nature of her claim is not disclosed. Prior to her filing that action she wrote the defendant by registered mail from her home in Detroit, Michigan, several times asking payment and settlement of his indebtedness to her, but she received no answer. About the first of June, 1944, 36 days before the attacked mortgage was executed, she came to Monticello where defendants resided and, either just before or just following her visit to her former home of Monticello, she placed her claim in the hands of her attorneys and they conferred with George Graber with reference to its payment, and demanded same from him, which he declined to make. At the same time he was informed that if he did not pay, suit would be entered against him. The evidence discloses that the controversy between plaintiff and the defendant in that action gained considerable notoriety in the local community. It also discloses that both defendants held positions with the same company and were at that time sweethearts of more or less long standing, which culminated, as we have stated, in their marriage shortly thereafter.

The testimony of each defendant is vague, vacillating and of doubtful convincing force on each of the two essential elements to sustain their defense, i. e., (1) an actual indebtedness from George Graber to his co-defendant, and (2) if true, that she as mortgagee did not participate in the very clearly established purpose of her husband to put the mortgaged property out of the reach of plaintiff should the latter succeed in recovering a judgment against him. Both defendants testified that the $2,000, to secure which the attacked mortgage was

given, was furnished by the mortgagee to the mortgagor from time to time beginning in 1943, to meet his expenses as a patient in a hospital, from which he was released in the early part of 1944. Mrs. Graber was asked from what source she obtained the money which she claimed to have advanced to her co-defendant and she stated that she borrowed $1,000 from one Eugene Zeigler which he advanced to her $250 by check and later advanced $500 in cash and still later $250 in cash, but none of that indebtedness was evidenced by any note, receipt or other written obligation, nor was Mr. Zeigler introduced as a witness to prove any such amount furnished by him.

Mrs. Graber claims to have advanced $250 of that borrowed $1,000 to her husband. She also claims to have paid some hospital and medical bills for him, but they were all, or practically all, paid, as she testified, in cash, and if she issued any checks none of them were produced. Neither did she testify from what source she obtained the remaining portion of her alleged debt amounting to $1,750,—the amount remaining after the payment of $250 from the alleged borrowed amount from Zeigler—though asked to do so. She took no note from her sweetheart and embryonic husband for any of the alleged amounts so advanced to him. Notwithstanding her alleged $2,000 debt was one created prior to the date of the attacked mortgage, it nevertheless recited "that said party of the first part has this day become indebted to the said party of the second part."

As stated, Mrs. Graber denied, in answering exceedingly leading questions, any intent on her part to defraud plaintiff or any of her future husband's creditors, and also denied any knowledge of plaintiff's visit to Monticello, 36 days before the mortgage is alleged to have been given. She was asked and answered:

"Q. Don't you know it was generally understood by everybody, at least a short time after Miss Toomey came here, her purpose in coming was to collect some money she had loaned him (Geo. Graber)? A. I don't remember about that.

"Q. Will you say you never had heard that? A. *I suppose I had heard it.*" (Our emphasis and parenthesis.)

We, therefore, have a case where the testimony, as expressly given, is not only vague, but when measured by the rules universally followed in transactions of this nature, becomes of but little, if any, convincing force. As we have seen, no record was made anywhere by anyone of the transactions testified to in an effort to prove the necessary bonafides to uphold the attacked mortgage.

In addition to the above there appears in this record at least three facts which are universally characterized by courts, and known to the profession, as "badges of fraud." They are: (1) That the mortgage was executed by the mortgagor almost immediately after he had been notified of plaintiff's intention to sue him on her alleged indebtedness; (2) that the mortgage covered *all* of the property the mortgagor owned at the time, and (3) confidential relationship existing between the mortgagor and the mortgagee, culminating shortly thereafter in their marriage from which the conclusion might well be drawn that they were engaged when the mortgage was executed. As we have stated, they both held positions under the same employer, and it is inconceivable—with the existence of such relationship between them—that the mortgagee in this case was ignorant of the fact of plaintiff's claim against the mortgagor and her intention to reduce her claim to judgment. Many cases and much text could be cited in support of all three of the badges of fraud above stated, any one of which is sufficient to raise a presumption of fraud, and to cast the burden of disproving it on defendants.

In support of badge (1) we deem it sufficient to cite only the case of Allen v. Ligon, 175 Ky. 767, 194 S. W. 1050. The same case is authority sustaining badge (2) with other cases cited therein, and badge (3) is sustained by the cases of Pope v. Cawood, 293 Ky. 660, 170 S. W. 2d 55, and Morgan v. Hibbard, Spencer, Bartlett & Co., 299 Ky. 57, 184 S. W. 2d 218. Supporting all of them is the recent case of Daniels v. Harp, 300 Ky. 867, 190 S. W. 2d 480. Each of the domestic cases fortify the conclusions arrived at therein by other prior domestic ones, which we deem is unnecessary to list in this opinion. A more detailed analysis of the testimony in the case would substantiate our conclusion that actual fraud, in which both parties to the mortgage participated, was proven in this case and that the court erred in concluding otherwise and in dismissing the petition.

It is argued, however, that express testimony of defendants in a case like this should be accepted in the absence of similar contradictory testimony by the opposing litigant, but, as said in the case of Com. v. Filiatreau, 161 Ky. 434, 170 S. W. 1182, 1183:

"While fraud is not to be presumed, it is not required of him who charges it that he should enter into the secret councils of the perpetrators thereof and wrest therefrom the direct evidence of their wrongdoing. Fraud may be inferred; circumstances may be shown of such character as to create inferences making peremptory demand for explanation."

It would be an easy task to list other cases showing that fraud may be established by circumstantial evidence alone when the proven circumstances are such as to lead to no other logical conclusion, and which is true though express testimony given by interested parties might deny the principal facts in issue.

It is also insisted that the petition was defective in that it contained a misjoinder of actions. However, if that should be true (which we do not decide) the misjoinder, if one, was waived by failing to enter motion for plaintiff to elect which cause of action she would prosecute, and which is expressly so declared in section 86 of our Civil Code of Practice, saying: "Objections to the misjoinder of causes of action are waived, unless they are made pursuant to section 85," the latter section prescribing the right to move for an election when inconsistent causes of action or defenses are improperly joined in the same pleading.

Wherefore, the judgment is reversed with directions to set it aside and to enter one in conformity with this opinion.