**RUSSELL COUNTY FEED MILL, INC.,
Appellant,**

v.

**William KIMBLER et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 21, 1975.

Robert L. Bertram, Jamestown, for appellant.

Leonard E. Wilson, Robert L. Wilson, Wilson & Wilson, Jamestown, for appellees.

CARL D. MELTON, Special Commissioner.

This is an action by a creditor seeking to have a deed set aside as fraudulent under

the provisions of KRS 378.010. From the judgment of the trial court dismissing the plaintiff's claim against the defendants, Douglas E. Corbin and his wife, Brenda Corbin, the plaintiff appeals. We reverse.

The plaintiff, Russell County Feed Mill, Inc., filed suit in the Russell Circuit Court on August 22, 1969 against the defendants, William Kimbler and his wife, Elva Kimbler, and Douglas E. Corbin and his wife, Brenda Corbin. Specifically, the suit sought the following relief: (1) to have the deed which was executed by William and Elva Kimbler to Douglas and Brenda Corbin on August 19, 1969, covering the Kimblers' chicken farm of approximately 24 acres, set aside on the grounds that it was executed with the fraudulent intent to cheat, hinder, delay and defeat the claims of their creditors, including the plaintiff, (2) to obtain judgment upon an interest bearing note in the amount of $5,531.48 which the Kimblers had executed and delivered to plaintiff in December of 1968 in satisfaction of an overdue feed account, and (3) to have the amount of any judgment recovered upon the note adjudged a lien against the farm.

With all allegations of plaintiff's complaint standing controverted by the pleadings, the case proceeded to trial before a jury. Through its proof in chief, plaintiff established that the Kimblers owed the amount of the note sued upon. However, the only proof which plaintiff introduced which tended to support its claim that the deed in question was fraudulently made was as is next set forth.

The deed from the Kimblers to the Corbins was made on August 19, 1969 and was recorded in the Russell County Clerk's Office on the same date. The consideration which was recited in the deed was "$10,000.00, the receipt of which is hereby acknowledged and no other consideration," but in the defendants' answers to plaintiff's request for admissions they stated "that. the consideration transferring the property in question was Douglas E. Cor-

bin and Brenda Corbin assuming the payment of a Farmers Home Administration mortgage in the sum of $4,998.33, and the further consideration of Douglas E. Corbin and Brenda Corbin assuming the payment of an operating loan from Farmers Home Administration in the sum of $8,798.34."

The grantees, Douglas and Brenda Corbin, bore the relationships of son-in-law and daughter to their grantors, William and Elva Kimbler. Only three days prior to the making of the deed in question, on August 16, 1969, Franzel Kimbler, the plaintiff's manager, went to the Kimblers' farm and confronted the Kimblers and Corbins regarding what arrangements they intended to make to pay on the note which came due in December. According to Franzel Kimbler, "he [William Kimbler] said well, that he didn't know, that as of now, that he had turned everything over to the kids (indicating the defendant, Brenda Corbin), that she was in charge of all of it now."

Franzel Kimbler further testified that at that time he talked to the defendant, Brenda Corbin, and "asked her what they. had done, had they bought the farm or what was going on, if they had taken over all the responsibility William had and was going to be in charge of the bill that was owed at the Feed Mill and the payment of the note that fall and she laughed and said she wasn't going to pay nothing and that wasn't her bill and she wasn't going to pay it and I guess we would have to do our bill like Mr. Osborn was going to have to do with his at the FHA office; they were going to have to mark it off." Franzel Kimbler also testified that when the Kimblers transferred the farm in question to the Corbins "*it meant William didn't have no [sic] property.*" (Emphasis added.)

Upon completion of the plaintiff's proof in chief, the Corbins moved the court to dismiss them as parties to the suit on the grounds that plaintiff had failed to introduce any proof showing that the deed in

question was fraudulently made. Later in arguing for dismissal the Corbins changed the motion to one for a directed verdict. Plaintiff vigorously objected to the granting of the directed verdict in favor of the Corbins, contending that it had made a prima facie case that the conveyance was fraudulent and thus it became incumbent upon the Corbins to present rebutting evidence. Thereupon, the trial court announced that it was going to delay ruling on the motion for a directed verdict until the conclusion of the case in order to see whether plaintiff could produce any cases supporting its argument. The trial court said further, "if none are produced, of course the motion will be sustained."

Immediately following the trial court's expression of its intended ruling, counsel for defendants rested his case as to the Corbins. At the same time he confessed judgment in favor of plaintiff against the Kimblers for the sum of $4,600.00 and the confession of judgment was accepted by the court. Following the Corbins' failure to go forward with evidence showing that the transfer was not fraudulent, plaintiff moved the court for a directed verdict against the Corbins adjudging that the conveyance in question was fraudulently made. Although the record does not reflect that the trial court expressly overruled plaintiff's motion for a directed verdict, neither does it show that the motion was sustained. Therefore, we shall treat the motion as having been overruled since a directed verdict was granted the Corbins and the final judgment dismissed the plaintiff's claim as to the Corbins.

The provisions of KRS 378.010 which relate to this case read:

"Every * * * conveyance * * * or transfer of * * * any estate, real or personal, * * * made with the intent to delay, hinder or defraud creditors * * * shall be void as against such creditors * * *. This section shall not affect the title of a purchaser for a val-uable consideration, unless it appears that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor."

■ In an action to set aside a conveyance for fraud, the general rule is that the fraud must be established by clear and convincing evidence. There are, however, some widely recognized exceptions to the general rule which have been characterized by the courts as "badges of fraud." Pope v. Cawood, 293 Ky. 660, 170 S.W.2d 55.

■ When sufficient "badges of fraud" are shown that it would be unreasonable, in the absence of evidence to the contrary, to find that the transfer was not fraudulent, the rule to which we have long adhered (although not always expressed precisely in the same form) is that the plaintiff is entitled to a directed verdict in the absence of countervailing proof tending to show that the transfer or conveyance was made fairly and without intent to defraud the creditor. See Hayes v. Rodgers, Ky., 447 S.W.2d 597; Bolling v. Adams, Ky., 296 S.W.2d 696; Daniels v. Harp, 300 Ky. 867, 190 S.W.2d 664; Toomey v. Graber, 300 Ky. 788, 190 S.W.2d 480; and numerous other cases headnoted in 9A Kentucky Digest, Fraudulent Conveyances Key Nos. 270–302.

■ These "badges of fraud" are generally held to exist:

(1) where the transfer or conveyance is between persons who are related or occupy a confidential relationship. Bolling v. Adams, supra;

(2) where the transfer or conveyance contains false statements and recitals as to consideration. Magic City Coal & Feed Co. v. Lewis, 164 Ky. 454, 175 S.W. 992;

(3) where the transfer or conveyance is made by a debtor in anticipation of a suit against him or after a suit has begun or is pending against him. Hager v. Coleman, 307 Ky. 74, 208 S.W.2d 518; and

(4) where the transfer or conveyance is made by a debtor who transfers all or any appreciable part of his property when he is insolvent or financially embarrassed. Hayes v. Rodgers, supra.

The plaintiff's first contention is that its evidence established the prevalence of all of the foregoing "badges of fraud" in the conveyance in question. Thus, in order for the Corbins to avoid a directed verdict for the plaintiff they were required to show that the conveyance to them had been made fairly and without intent to defraud the plaintiff. Plaintiff's further contention is that the trial court committed reversible error by ruling to the contrary. We agree.

■ The plaintiff's proof clearly established that all parties to the conveyance occupied both a confidential and close family relationship by reason of the son-in-law and daughter relationships of the Corbins to the Kimblers. This "badge of fraud" was alone sufficient to effect a shift to the Corbins of the burden to offer evidence showing that no fraud was involved in the conveyance. Bolling v. Adams, supra, and cases therein cited; Daniels v. Harp, supra; Toomey v. Graber, supra; Deupree v. Hall, D.C.Ky., 115 F.Supp. 956; Glock v. Carpenter, D.C.Ky., 184 F.Supp. 829.

The "false recital of consideration" badge was established when the defendants claimed a consideration for the conveyance in their written admission different from that shown in the deed. The "anticipation of a suit" badge was established by reason of the conveyance having been made on the third day following Franzel Kimbler's visit with the defendants and the conversations which ensued between them. Finally, the "insolvency of the debtor" badge was established through the testimony of Franzel Kimbler that when the farm was transferred "it meant that William didn't have no [sic] property." Next, plaintiff contends that since its evidence established such "badges of fraud" and the Corbins declined to offer any evidence showing that the conveyance to them was made

fairly and without intent to defraud the plaintiff, the trial court erred in sustaining the Corbins' motion for a directed verdict and in overruling plaintiff's motion for a directed verdict.

Finally, plaintiff contends that we should reverse the judgment appealed from and direct the trial court to (a) enter judgment setting aside the deed in question as a fraudulent conveyance, (b) adjudge a lien against the farm in favor of the plaintiff for the amount of its judgment against the Kimblers, and (c) amend the judgment against the Kimblers from $4,700.00 to $4,600.00 so as to reflect the true amount agreed upon at the time of the confession of judgment.

■ Since there was no motion for a judgment n. o. v., we cannot direct that such a judgment be entered. See Flynn v. Songer, Ky., 399 S.W.2d 491, 493 (1966).

The judgment is reversed for further proceedings in conformity with this opinion.

All concur.