RENDERED: MARCH 29, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-01279-MR

PROVIDENCE GROUP, INC.                                    APPELLANT

|  | APPEAL FROM JEFFERSON CIRCUIT COURT |
|---|---|
| v. | HONORABLE MITCH PERRY, JUDGE |
|  | ACTION NO. 20-CI-001763 |

DIANNE HOLBROOK, INDIVIDUALLY AND
AS EXECUTRIX AND PERSONAL
REPRESENTATIVE OF THE
ESTATE OF RALPH D. HOLBROOK; AND
LAKE FOREST POST ACUTE, LLC D/B/A
VALHALLA POST ACUTE                                    APPELLEES

AND

NO. 2022-CA-01396-MR

LAKE FOREST POST ACUTE, LLC
D/B/A VALHALLA POST ACUTE                              APPELLANT

|  | APPEAL FROM JEFFERSON CIRCUIT COURT |
|---|---|
| v. | HONORABLE MITCH PERRY, JUDGE |
|  | ACTION NO. 20-CI-001763 |

DIANNE HOLBROOK, INDIVIDUALLY AND
AS EXECUTRIX AND PERSONAL
REPRESENTATIVE OF THE
ESTATE OF RALPH D. HOLBROOK; AND
PROVIDENCE GROUP, INC.                                        APPELLEES


OPINION
REVERSING AND REMANDING
IN APPEAL NO. 2022-CA-1279-MR
AND AFFIRMING
IN APPEAL NO. 2022-CA-1396-MR

** ** ** ** **

BEFORE:  EASTON, ECKERLE, AND JONES, JUDGES.

ECKERLE, JUDGE:  Appellants, Providence Group, Inc. ("PGI") and Lake Forest

Post Acute, LLC d/b/a Valhalla Post Acute ("Valhalla"), each appeal from a

judgment of the Jefferson Circuit Court confirming a jury verdict in favor of

Appellees, Dianne Holbrook, individually and as executrix and personal

representative of the Estate of Ralph D. Holbrook (collectively, "the Estate").  In

its appeal, PGI objects to the language in the post-trial judgment reserving the

claims against PGI "for various liability and collection matters."  PGI further

argues that the Trial Court also erred in allowing the Estate to conduct post-

judgment discovery/depositions to address whether it was subject to liability for

the judgment.  PGI also argues that the Trial Court's final judgment improperly

pierced its corporate veil to hold it liable for the judgment against Valhalla.

-2-

We agree with PGI that the Trial Court erred by entering the final judgment because the Estate had not pleaded liability based on that theory, and the Estate had an outstanding motion to file an amended complaint asserting a claim to pierce PGI's corporate veil. Furthermore, the claim was not ripe for adjudication in the absence of any allegation that the judgment could not be collected against Valhalla. Therefore, we reverse the judgment against PGI and remand for entry of a new judgment dismissing the negligence and agency claims against PGI. This judgment shall be without prejudice to any collection claims against PGI that may arise in the future.

In its appeal, Valhalla argues that it was entitled to a directed verdict on the Estate's claim for punitive damages, and the Trial Court erred in denying remittitur of the loss-of-consortium judgment. We conclude that there was sufficient evidence of gross negligence to warrant submitting punitive damages to the jury, and Valhalla failed to establish that the loss-of-consortium award was excessive. Hence, we affirm the judgment against Valhalla.

## I.    Facts and Procedural History

In March 2019, Ralph Holbrook suffered a fall while he was a patient at Valhalla, a rehabilitation facility located in Louisville, Jefferson County, Kentucky. He and his wife, Dianne Holbrook, filed an action against Valhalla and five individual employees, asserting claims for negligence and loss of consortium.

-3-

They also filed an action against PGI, the management company and controlling owner of Valhalla, asserting claims for negligent supervision and vicarious liability. Following Ralph Holbrook's death, Dianne Holbrook was appointed Executrix, and the Estate was substituted as a party.

PGI filed a motion for summary judgment, arguing that it had no independent operations or oversight responsibilities at Valhalla. In response, the Estate asserted that there were genuine issues of material fact concerning PGI's management and oversight at Valhalla. The Estate noted that PGI was the sole owner of Valhalla at the time of Holbrook's residency. The Estate also argued that PGI had pervasive oversight of Valhalla's staff. That authority included the power to hire and fire Valhalla's administrator, consultation as to facility managers, and decision-making regarding budgeting. The Estate separately argued that PGI was liable for the acts of subagents employed by Valhalla. Finally, the Estate argued that PGI should remain in the action because it would be ultimately liable for any judgment against Valhalla.

Following a hearing, the Trial Court denied PGI's motion for summary judgment. Prior to trial, the Estate agreed to dismiss the individual defendants. The matter then proceeded to a jury trial against Valhalla and PGI from May 26 until July 2, 2022. The Trial Court granted directed verdicts for PGI on the issue of corporate negligence but reserved the claims against PGI for

vicarious liability and collection matters. At the conclusion of proof, the Trial Court submitted the claims against Valhalla to the jury.

The jury returned a verdict for Valhalla on the wrongful-death claim. But on the remaining claims, the jury unanimously found that Valhalla was negligent, and by a vote of 11-1 concluded that its negligence was the sole cause of Ralph Holbrook's injuries. The jury's damage award was as follows: $360,000 for medical expenses; $500,000 for pain and suffering; $1,200,000 on Dianne Holbrook's claim for loss-of-consortium; and $700,000 for punitive damages.

Following trial, the Trial Court entered a judgment on June 20, 2022. In addition to setting out the jury's verdict against Valhalla, the judgment stated, "[c]laims against [PGI] for vicarious liability and collection matters are reserved and subject to further entry."

On June 30, 2022, Valhalla and PGI filed a timely motion to alter, amend, or vacate the judgment, pursuant to CR[1] 59.05. PGI sought to remove the above-referenced language from the judgment. In addition, Valhalla sought remittitur of the $1,200,000 loss-of-consortium award, arguing that it was excessive. On the former issue, the Estate filed a motion to take the deposition of Valhalla's corporate representative. The Trial Court granted the motion and

---

[1] Kentucky Rules of Civil Procedure.

directed the Estate take the deposition prior to the scheduled hearing on August 31, 2022.

Valhalla and PGI then filed a petition for writ of prohibition to prevent the Estate from taking depositions on the issue of post-judgment collections. This Court denied the motion for intermediate relief, concluding that they had failed to show that the Trial Court was acting outside its jurisdiction, or that they would suffer immediate and irreparable injury before a hearing may be had on the petition. *Lake Forest Post Acute LLC v. Hon. Mitch Perry*, No. 2022-CA-0909-OA (Order Denying Intermediate Relief August 3, 2022). This Court subsequently granted a joint motion to dismiss the petition for writ of prohibition.

PGI and Valhalla identified three corporate representatives: two for PGI and one for Valhalla. In their depositions, PGI Risk Manager, Jonathan Teague; PGI General Counsel, John Mitchell; and Valhalla Administrator, Jarom Schmidt testified concerning the liability coverage available, any disputes or reservations of rights concerning insurance coverage, any forms of indemnity or financial security to secure the judgment, and the relationship between PGI and Valhalla. Based on these depositions, the Estate asserted that Valhalla operated as an alter ego of PGI, pointing to the common ownership and management of both companies. The Estate also noted the new evidence showing that Valhalla was undercapitalized and did not have separate liability coverage. The depositions

further raised a significant question whether PGI's insurance would cover the Estate's judgment against Valhalla. Consequently, the Estate moved to amend its complaint to assert new claims against PGI, including a claim to pierce PGI's corporate veil to collect the judgment against Valhalla.

The Estate took several more depositions, and the Trial Court held additional hearings. On September 30, 2022, the Trial Court entered an amended judgment. The Trial Court's order did not address the Estate's motion to amend the pleadings, but denied the motion to amend the judgment and found as follows:

> At the series of hearings following the depositions, the Plaintiff [Estate] outlines the convoluted web of business practices of PGI and the Defendants. The evidence indicated a loss of corporate separateness and the presence of circumstances under which continued recognition of this distinction would promote injustice, satisfying the requirements of corporate veil piercing outlined in *Inter-Tel Technologies v. Linn Station Properties, LLC*, 360 S.W.3d 153 (Ky. 2012). Thus, this Court is convinced from the record and evidence presented, that in the interests of justice and equity, it is necessary to include PGI in the judgment for collection purposes.

The Court separately denied the motions by PGI and Valhalla for remittitur of the loss-of-consortium award, concluding that it was supported by substantial evidence. The Trial Court's judgment reiterated that the Estate could collect the full judgment against both PGI and Valhalla. PGI and Valhalla each filed notices of appeal from portions of the judgment. This Court directed that

their appeals be heard together. Additional facts will be set forth below as necessary.

## II.    PGI's Appeal (Appeal No. 2022-CA-1279-MR)

In its appeal, PGI first argues that the Trial Court erred by including it in the judgment "for various liability and collection matters." Since the Trial Court dismissed the negligence and other claims against it, PGI contends that it should not have remained in the judgment following trial. For the same reason, PGI argues that the Trial Court lacked the authority to require that it participate in the Estate's post-trial discovery. In light of the foregoing, PGI argues that the Trial Court had no authority to pierce its corporate veil and allow the Estate to collect the judgment against Valhalla from it.

The Estate's original and amended complaints asserted claims against PGI for corporate negligence, violation of the Long-Term Care Resident's Rights Act,[2] and a claim that PGI:

> by and through its agents, ostensible agents, servants and employees, undertook to provide and were responsible for providing management services; supervision; oversight; financial services and oversight; advice on policies, procedures, and business objectives; regulatory compliance oversight; and other support services for [Valhalla], and its agents, ostensible agents, servants, and employees, and the other Defendants named herein.

---

[2] Kentucky Revised Statutes ("KRS") 216.510 *et seq.*

The Estate argues that it sufficiently pleaded a vicarious liability claim against PGI to allow the Trial Court to reserve those issues for post-trial adjudication. The Estate also notes that, after trial, it sought to file an amended complaint asserting a claim to pierce PGI's corporate veil. In addition, CR 15.02 allows a Trial Court to amend the pleadings to conform to matters actually litigated and considered. *See Bowling Green-Warren Cnty. Airport Bd. v. Long*, 364 S.W.2d 167, 171 (Ky. 1962). As a result, the Estate maintains that its claim to pierce PGI's corporate veil was properly before the Trial Court.

The most significant question concerns the procedural aspects of this litigation. Following the trial, the Estate sought discovery against PGI and Valhalla on the reserved collection issues. PGI argues that such post-trial discovery is improper. Furthermore, the Estate filed a motion to file an amended complaint asserting the corporate-veil piercing. The Trial Court ruled on the ultimate issue without ruling on the motion to amend the complaint. Moreover, there was no summary judgment motion pending.

The Estate's first amended complaint asserts that Valhalla was acting as PGI's agent in providing services to Ralph Holbrook. These allegations were sufficient to plead a claim for vicarious liability. Vicarious liability, sometimes referred to as the doctrine of *respondeat superior*, is not predicated upon a tortious act of the employer, but upon the imputation to the employer of a tortious act of the

-9-

employee "by considerations of public policy and the necessity for holding a responsible person liable for the acts done by others in the prosecution of his business, as well as for placing on employers an incentive to hire only careful employees." *Disabled Am. Veterans, Dep't of Kentucky, Inc. v. Crabb*, 182 S.W.3d 541, 555 (Ky. App. 2005) (quoting *American General Life & Accident Insurance Co. v. Hall*, 74 S.W.3d 688, 692 (Ky. 2002) and *Johnson v. Brewer*, 266 Ky. 314, 98 S.W.2d 889, 891 (1936)). Vicarious liability is based upon the existence of a relationship that justifies holding the principal liable for the negligence of the agent.

A separate, but related rule governs the liability of a shareholder for the debts of a corporation or incorporated entity. This rule protects a shareholder from liability for the corporate debt except upon proof of circumstances that justify "piercing the corporate veil" or unless there is "a particular statute imposing liability" for the corporate debt. *Smith v. Isaacs*, 777 S.W.2d 912, 913 (Ky. 1989) (citing *Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky. 1983)). Kentucky permits traditional piercing under an instrumentality or an alter-ego theory when two dispositive elements are met: (1) domination of the corporation resulting in a loss of corporate separateness and (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice. *Inter-Tel Techs.*, 360 S.W.3d at 165. Proof of actual fraud is not required, but the injustice must be

something beyond the mere inability to collect a debt from the corporation. *Id.* The decision whether to pierce the corporate veil is an equitable one to be decided by the Trial Court. *Daniels v. CDB Bell, LLC*, 300 S.W.3d 204, 213 (Ky. App. 2009).

The circumstances in this case involve the Estate's effort to hold a corporation liable for a judgment against its wholly-owned limited-liability company. However, the principle and rule remain the same. *See also* KRS 271B.6-220(2) and 275.150. In any event, piercing the corporate veil and vicarious liability are distinct theories of joint and several liability.[3]

Although the Estate pleaded and argued that Valhalla was acting as an agent of PGI, the claim to pierce PGI's corporate veil did not arise until after trial via its motion to file an amended complaint. The Estate correctly notes that CR 15.02 allowed the Trial Court to amend the pleadings when issues are tried by express or implied consent of the parties. The Trial Court has broad discretion to grant a post-trial motion to amend under a theory of implied consent. *Nucor Corp. v. Gen. Elec. Co.*, 812 S.W.2d 136, 146 (Ky. 1991). That discretion does not turn on actual consent but on actual prejudice, in the sense that the defendant is unable to present a defense that would have otherwise been available. *Id.* The Court must

---

[3] In its response to the pre-trial motion for summary judgment, the Estate specifically asserted that its vicarious liability claim against PGI was based upon an agency theory.

also consider whether the defendant had notice of the claim within any applicable limitations period. *Hill v. State Farm Ins. Co.*, 390 S.W.3d 153, 157 (Ky. App. 2012).

In the alternative, the Estate may submit a claim to pierce PGI's corporate veil via the supplemental pleading procedure set forth in CR 15.04. *Williams v. Oates*, 340 S.W.3d 84, 87 (Ky. App. 2010). But in either case, the Trial Court must rule on the motion to amend. *See Farrow v. Downing*, 374 S.W.2d 480, 481 (Ky. 1964). We find no indication in the record that it made such a ruling.

PGI further argues that the Trial Court lacked jurisdiction to permit entry of an amended complaint. It is well-established that the provisions of CR 15 relating to amended and supplemental proceedings apply only to amendments offered during the pendency of the action. *James v. Hillerich & Bradsby Co.*, 299 S.W.2d 92, 94 (Ky. 1956). PGI contends that Trial Court lacked jurisdiction to permit an amended complaint more than ten days after the entry of the judgment. *Id.* But in this case, the June 20, 2022, Judgment dismissing the claims against PGI was not designated as final and appealable. Moreover, the filing of a CR 59.05 motion on June 30, 2022, would have operated to suspend the finality of the judgment. Therefore, the Trial Court retained jurisdiction to consider the amended complaint.

But, as mentioned above and as all parties concede, the Trial Court never issued a written Order allowing an amended complaint. Indeed, it did not ever issue an express oral ruling granting the motion to amend. Furthermore, the Trial Court did not conduct an evidentiary hearing, allow the calling of witnesses to testify, or request any documents or briefing. Even if we were to assume that the Trial Court implicitly granted the Estate's motion to file an amended complaint without allowing the taking of proof or argument, the matter still was not ripe for adjudication. If supplemental pleadings are permitted and then filed, PGI must be afforded an ample opportunity to answer the pleadings and to mount a full defense. *Williams*, 340 S.W.3d at 87. Such defenses may include claims that the execution proceedings fail to state a claim, are not timely, or are inequitable. *Id.* Consequently, the Estate's claim to pierce PGI's corporate veil was not properly before the Trial Court.

Furthermore, the Estate's claim to pierce PGI's corporate veil was not ripe for yet another reason. In *Inter-Tel Techs., Inc.*, *supra*, the Kentucky Supreme Court advised, "[c]ourts should not pierce corporate veils lightly but neither should they hesitate in those cases where the circumstances are extreme enough to justify disregard of an allegedly separate corporate entity." 360 S.W.3d at 168. While actual fraud is not required, there must be a substantial showing of an injustice beyond mere inability to collect a debt from the corporation. *Id.* at 165.

-13-

In this case, the Estate alleges that PGI and Valhalla were substantially intermingled in their assets and governance. But there is no allegation that the conduct of PGI rendered Valhalla incapable of paying the judgment against it. At most, there is only some question about Valhalla's capitalization and the insurance policies available to Valhalla. However, at oral arguments, all parties admitted that Valhalla posted bond in this appeal,[4] and that bond is sufficient to cover the judgment. Thus, there has not been, and apparently there cannot be, a showing of an inability to collect a judgment from Valhalla. Thus, this issue appears moot and not subject to further review. However, and conversely, this matter is also not ripe for adjudication. Thus, counsel for PGI's oral argument that the appeal is both "too soon," and simultaneously "too late" appears valid.

The doctrine of piercing the corporate veil is an equitable remedy, not a cause of action unto itself, which is used as a means of imposing liability where the continued recognition of corporate separateness would subject the plaintiff to an unjust loss. *Daniels*, *supra*, 300 S.W.3d at 211-12. Any potential question concerning Valhalla's ability to pay the judgment has not yet properly arisen. Thus, remanding this matter for a ruling on the Estate's motion to file an amended

---

[4] PGI has also posted an appellate bond.

complaint would not have any practical effect on the currently existing controversy on appeal. *See Morgan v. Getter*, 441 S.W.3d 94, 98-99 (Ky. 2014).

As a result, the Trial Court clearly erred by granting a judgment against PGI. Furthermore, the Estate's motion to file an amended complaint to pierce PGI's corporate veil was premature because there was no current controversy concerning collection of the judgment against Valhalla. Because there were no remaining claims pending against PGI, the Trial Court's orders concerning post-trial discovery must also be set aside. Consequently, this matter must be remanded to the Trial Court for entry of a final judgment dismissing the filed claims against PGI but without prejudice to any collection matters that may later arise. Only once a final judgment is issued do the issues of post-judgment execution and a writ pursuant to CR 69.03 potentially arise.

## III. Valhalla's Appeal (Appeal No. 2022-CA-1396-MR)

### A. *Punitive Damages Award*

#### i. Preservation

In its appeal, Valhalla challenges various aspects of the jury's verdict and judgment against it. Valhalla first argues that it was entitled to a directed verdict on the Estate's claim for punitive damages. Valhalla raised this issue by means of a motion for partial summary judgment prior to trial, and motions for directed verdicts at trial. The Estate argues that Valhalla waived this argument by

failing to move for a judgment notwithstanding the verdict ("JNOV") in its post-trial motion.

In a bench trial, motions for directed verdict or JNOV are neither appropriate nor necessary to preserve an objection to the sufficiency of the evidence. *LCH Properties, LLC v. Fannin*, No. 2011-CA-001993-MR, 2013 WL 2450526, at \*3 (Ky. App. Jun. 7, 2013) (unpublished). But in a jury trial, it is well-established that a motion for a directed verdict made at the close of the plaintiff's case is not sufficient to preserve error unless renewed at the close of all the evidence. *Kimbrough v. Commonwealth*, 550 S.W.2d 525, 529 (Ky. 1977), *overruled on other grounds by Ray v. Commonwealth*, 611 S.W.3d 250 (Ky. 2020). "A defendant must renew his motion for a directed verdict, thus allowing the trial court the opportunity to pass on the issue in light of all the evidence, in order to be preserved for our review." *Steel Technologies, Inc. v. Congleton*, 234 S.W.3d 920, 926 (Ky. 2007), *abrogated on other grounds by Osborne v. Keeney*, 399 S.W.3d 1 (Ky. 2012).

However, *Congleton* goes on to state that a defendant "can only prevail on an insufficiency of the evidence claim if preserved through a motion for a JNOV, which in turn must be predicated on a directed verdict motion at the close of all the proof." *Id.* Unlike in the current case, the defendant in *Congleton* failed to renew its motion for directed verdict at the close of proof. Nevertheless, the

-16-

Estate maintains that a post-trial JNOV is a prerequisite to preservation of an insufficiency of the evidence claim even where there were proper motions for directed verdict. *See also Bryan v. CorrectCare-Integrated Health, Inc.*, 420 S.W.3d 520, 524 (Ky. App. 2013); *Russell Cnty. Feed Mill, Inc. v. Kimbler*, 520 S.W.2d 309, 312 (Ky. 1975); and *Flynn v. Songer*, 399 S.W.2d 491, 493 (Ky. 1966).

Following entry of the judgment, PGI and Valhalla filed a joint motion to amend the judgment. PGI argued that the Trial Court should not have reserved any issues against it following dismissal of the pleaded claims, and both argued that the loss-of-consortium judgment was excessive. There is some question whether a CR 59.05 motion is sufficient to preserve a challenge to the sufficiency of the evidence. *See Popplewell v. Hooe*, No. 2010-CA-001627-MR, 2012 WL 592276, at *1 (Ky. App. Feb. 24, 2012) (unpublished). But even assuming the motion effectively functioned as one for JNOV, the post-trial motion did not challenge the sufficiency of the evidence supporting the jury's verdicts for compensatory or punitive damages.

The language in *Congleton* strongly suggests that Valhalla was required to file a post-trial JNOV in addition to its requests for a directed verdict at trial. However, this language emphasized that defendant must move for a directed verdict at the close of the plaintiff's case and renew its motion for directed verdict

-17-

at the close of proof. *Congleton*, 234 S.W.3d at 926. Given this ambiguity in the law, we have no desire to create unnecessary traps to preservation of issues for appeal. Preferably, Valhalla should have filed a post-trial motion for JNOV to preserve its objection to the sufficiency of the evidence for punitive damages.[5] However, we conclude that Valhalla's motions for directed verdict at trial were sufficient to preserve the issue for appellate review.

###### ii. Directed Verdict

Assuming that Valhalla's challenge is preserved, we conclude that the Trial Court properly submitted the issue to the jury. Valhalla notes that KRS 411.184(2) requires proof of punitive damages by clear and convincing evidence. *But see Williams v. Wilson*, 972 S.W.2d 260, 264 (Ky. 1998) (questioning the statute's "vastly elevated standard for recovery of punitive damages"). Consequently, Valhalla maintains that the Trial Court must also consider whether there is clear and convincing evidence in its ruling on a motion for directed verdict relating to punitive damages. We disagree.

The standard of review for a directed verdict is set forth in *Daniels v. CDB Bell, LLC*, *supra*, as follows:

> When a directed verdict is appealed, the standard of
> review on appeal consists of two prongs. The prongs are:

---

[5] Valhalla noted at oral argument that it did file a motion for judgment notwithstanding the verdict, but not on this issue.

-18-

"a trial judge cannot enter a directed verdict unless there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ." *Bierman v. Klapheke*, 967 S.W.2d 16, 18-19 (Ky. 1998). "A motion for directed verdict admits the truth of all evidence which is favorable to the party against whom the motion is made." *National Collegiate Athletic Ass'n by and through Bellarmine College v. Hornung*, 754 S.W.2d 855, 860 (Ky. 1988), citing *Kentucky & Indiana Terminal R. Co. v. Cantrell*, 298 Ky. 743, 184 S.W.2d 111 (1944).

Clearly, if there is conflicting evidence, it is the responsibility of the jury, the trier of fact, to resolve such conflicts. Therefore, when a directed verdict motion is made, the court may not consider the credibility or weight of the proffered evidence because this function is reserved for the trier of fact. *National*, 754 S.W.2d at 860 (citing *Cochran v. Downing*, 247 S.W.2d 228 (Ky. 1952)).

In order to review the trial court's actions in the case at hand, we must first see whether the trial court favored the party against whom the motion is made, including all inferences reasonably drawn from the evidence. Second, "the trial court must determine whether the evidence favorable to the party against whom the motion is made is of such substance that a verdict rendered thereon would be 'palpably or flagrantly' against the evidence so as 'to indicate that it was reached as a result of passion or prejudice.'" If the answer to this inquiry is affirmative, we must affirm the trial court granting the motion for a directed verdict. *Id.* Moreover, "[i]t is well argued and documented that a motion for a directed verdict raises only questions of law as to whether there is any evidence to support a verdict." *Harris v. Cozatt, Inc.*, 427 S.W.2d 574, 575 (Ky. 1968). Further, "a reviewing court cannot substitute its judgment for that of the trial judge unless the trial judge is clearly erroneous." *Bierman*, 967 S.W.2d at 18.

-19-

*Daniels*, 300 S.W.3d at 215.

Valhalla does not appeal from the jury's verdict or judgment finding negligence or awarding compensatory damages. However, Valhalla argues that it was entitled to a directed verdict on punitive damages. An instruction on punitive damages is warranted if there is evidence that the defendant acted with oppression, fraud, malice, or gross negligence with wanton or reckless disregard for the lives, safety, or property of others. *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 51-52 (Ky. 2003). A party is entitled to have the jury instructed on the issue of punitive damages "if there was any evidence to support an award of punitive damages[.]" *Shortridge v. Rice*, 929 S.W.2d 194, 197 (Ky. App. 1996).

The threshold for the award of punitive damages is whether the misconduct was "outrageous" in character, not whether the injury was intentionally or negligently inflicted. *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389 (Ky. 1985). In a case where gross negligence is used as the basis for punitive damages, gross negligence has the same character of outrage justifying punitive damages as willful and malicious misconduct in torts where the injury is intentionally inflicted. Just as malice need not be expressed and may be implied from outrageous conduct, so too may wanton or reckless disregard for the rights of others be implied from the nature of the misconduct. *Id.* at 389-90.

However, a finding of gross negligence clearly requires more than a failure to exercise ordinary care. It requires a finding of a failure to exercise even slight care such as to demonstrate a wanton or reckless disregard for the rights of others. *Id. See also Phelps*, 103 S.W.3d at 51-52. In other words, gross negligence requires "a finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by 'wanton or reckless disregard for the lives, safety or property of others.'" *Gibson v. Fuel Transport, Inc.*, 410 S.W.3d 56, 59 (Ky. 2013) (citation omitted). *See also Nissan Motor Co., Ltd. v. Maddox*, 486 S.W.3d 838, 840 (Ky. 2015).

Valhalla contends that there was no evidence to support a finding of gross negligence based on its conduct relating to the treatment of Ralph Holbrook. This inquiry warrants a closer examination of the facts surrounding his injury. When Ralph Holbrook was admitted, Valhalla assessed him a "high fall risk" due to his knee replacement surgery and the results of his balance tests. Ralph Holbrook made steady progress in his physical therapy, gradually improving his strength and balance. Ralph Holbrook's injury took place on March 17, 2019, after he had been undergoing physical therapy for nearly two weeks.

During an extended physical therapy session, Physical Therapist Eric Henry ("Henry") performed a "balloon toss" activity with Ralph Holbrook. This was the first time Ralph Holbrook performed the activity, and Henry did not

-21-

provide detailed instructions on how to perform the activity. Valhalla's rehabilitation director, Jeff Baxter ("Baxter), testified that Henry should have instructed Ralph Holbrook to bat the balloon above his waist. In contrast, Ralph Holbrook testified that Henry specifically told him not to allow the balloon to touch the floor. Both Baxter and Henry's supervising physical therapist, Kevin Schoenfeld ("Schoenfeld"), described this instruction as "dangerous" and "irresponsible" considering Ralph Holbrook's fall risk.

Schoenfeld further testified that Henry should have remained within an arm's length of Ralph Holbrook. He also testified that Henry should have stopped the activity in the event Ralph Holbrook dropped the balloon. But during the activity, the balloon dropped to the floor, and Ralph Holbrook leaned forward to retrieve it. Instead of stopping the activity, Henry allowed Ralph Holbrook to pick up the balloon again. However, Ralph Holbrook again dropped the balloon and leaned forward to obtain it a second time without intervention from Henry, who once again did not stop the activity. This time, Ralph Holbrook lost his balance and fell, fracturing his hip. Henry was not within an arm's length of Ralph Holbrook either time the balloon fell.

Although Henry observed Ralph Holbrook laying on the floor "screaming in pain," he reported, "no injuries observed" on the incident report. The incident report was altered after Ralph Holbrook was admitted to the hospital.

-22-

The Estate also introduced evidence of inaccuracies on Henry's other therapy reports. Nevertheless, Valhalla argued at trial that Ralph Holbrook was solely at fault for his fall and injuries, and the jury completely rejected that notion.

At trial, the Estate argued that Valhalla had an incentive to log excessive rehabilitation minutes because it would be reimbursed by Medicare a higher level than if it failed to meet a certain threshold. In support of this argument, the Estate pointed to Valhalla's billing practices, asserting that it documented minutes of improper, or non-existent, care to meet the number of minutes required to receive maximum reimbursement under the billing threshold. The Estate also pointed out that Ralph Holbrook was scheduled for 48 minutes of physical therapy on the day of his fall, but Valhalla billed Medicare for 72 minutes on that day.[6]

The Estate argued that these practices showed that Valhalla pushed excessive amounts of rehabilitative therapy on patients, increasing the risk of injuries. The Estate further argued that the profitability of these practices was relevant to its claim for punitive damages. And the Estate argued that Valhalla's billing practices and inaccurate record-keeping suggest Valhalla attempted to conceal its practices and the severity of Ralph Holbrook's injuries.

---

[6] Valhalla maintains that the 72 minutes includes time after Ralph Holbrook's fall waiting for the ambulance to arrive.

Valhalla separately argues that the punitive damages award should be set aside because the Trial Court improperly admitted evidence of its billing practices as proof of the care it provided Ralph Holbrook. Valhalla contends that the evidence regarding its reimbursement rate improperly implied that its billing practices contributed to the allegedly negligent treatment of Ralph Holbrook. It further argues that fraudulent concealment is generally not a basis for punitive damage unless the concealment causes in separate and distinct damages from the underlying injury. *Hardaway Mgmt. Co. v. Southerland*, 977 S.W.2d 910, 917 (Ky. 1998). Consequently, Valhalla asserts that the evidence was either not relevant to the issue of punitive damages or that its prejudicial effect outweighed any probative value. In the absence of such evidence, Valhalla maintains that it would have been entitled to a directed verdict. In the alternative, Valhalla contends that the punitive-damages judgment was tainted by this evidence, and it was entitled to a new trial on that issue.

Valhalla states that it preserved its objection to the admission of this evidence in its pre-trial motion *in limine*. The Trial Court passed the motion, stating that it would address the admissibility of such evidence at trial. In such cases, a party must renew its objection to the introduction of such evidence at trial and seek a definitive ruling. *See Bratcher v. Commonwealth*, 151 S.W.3d 332, 350 (Ky. 2004); and *Commonwealth, Dep't of Highways v. Darch*, 390 S.W.2d 649,

651 (Ky. 1965). Valhalla does not identify where or how it objected to the introduction of the evidence or testimony at trial. Therefore, we agree with the Estate that Valhalla waived its objection to the admission of this evidence.

Thus, we return to Valhalla's argument that this evidence was insufficient to support the jury's award of punitive damages. Although the evidence of gross negligence was not overwhelming, the Estate provided notice of its claims, and Valhalla clearly had knowledge of its intent to seek punitive damages. It also introduced sufficient evidence to support the jury's finding that Valhalla acted with a wanton or reckless disregard for Ralph Holbrook's rights, life, or safety. Most notably, the Estate introduced evidence that Henry disregarded well-established safety protocols while conducting physical therapy with Ralph Holbrook. Henry also overlooked or disregarded the extent of Ralph Holbrook's injuries both during and after the fall. In so doing, the jury could conclude that Henry acted with reckless disregard for his health and safety.

Furthermore, the jury could find that Valhalla pushed excessive physical therapy minutes on patients to increase its Medicare reimbursement rates. That motive may have influenced physical therapists such as Henry to extend physical therapy beyond the capacity of its patients. And Valhalla's poor record-keeping both before and after the fall indicates a desire to hide the effects of these

practices when a patient is injured.[7]  When the evidence is viewed as a whole, we conclude that the Trial Court did not err by denying Valhalla's motion for directed verdict on punitive damages.

### B. Loss-of-Consortium Award

Finally, Valhalla argues that the Trial Court erred in denying remittitur of the judgment for loss-of-consortium.  The Estate contends that Valhalla waived its right to object to the amount of the award for loss-of-consortium because it failed to object to the "not to exceed" amounts in the jury instructions.  *Gibson v. Fuel Transp., Inc.*, 410 S.W.3d 56, 61 (Ky. 2013).  An objection raised to a jury instruction raised for the first time in a motion for a new trial is not timely and will not be considered by this Court.  *Gersh v. Bowman*, 239 S.W.3d 567, 574 (Ky. App. 2007),

In this case, the Trial Court instructed the jury that damages for loss of consortium were "not to exceed $5,000,000."  Valhalla concedes that it did not object to the "not to exceed" instruction but argues that the amount awarded for loss of consortium was disproportionate to the jury's actual award for negligence.[8]

---

[7] The Estate did not allege that it suffered any separate injury from the inaccurate record-keeping after Ralph Holbrook's injury.  Thus, under *Hardaway*, *supra*, the alleged fraud would not serve as an independent basis for punitive damages.  977 S.W.2d at 917.  But under KRS 411.186(2)(e), the jury could consider Valhalla's actions after the fall in determining the amount of punitive damages.

[8] The instructions for damages under the negligence award stated that damages were "Not to exceed" $3,000,000 for Ralph Holbrook's pain and suffering, and "Not to exceed $543.443.39"

Since Valhalla's objection goes to the evidence supporting the verdict rather than the content of the instructions, we conclude that its post-trial motion was sufficient to preserve the issue for appeal.[9]

Valhalla primarily argues that an award for loss-of-consortium is presumptively excessive if it exceeds the underlying award for compensatory damages. Valhalla relies heavily on *Ashmore v. Hartford Hosp.*, 208 A.3d 256,

---

for Ralph Holbrook's medical expenses. Given these instructions, Valhalla could not have raised its argument about the disproportionate judgment for loss of consortium until after the jury returned its verdicts.

[9] We recognize that "not to exceed" amounts are commonly used in jury instructions to reflect the plaintiff's last-stated claim for unliquidated damages. *See Fratzke v. Murphy*, 12 S.W.3d 269, 271 (Ky. 1999). As noted, the parties here did not object to inclusion of those amounts or the "not to exceed" wording. However, instructions including "not to exceed" numbers are a holdover from the Code of Practice in Civil Cases ("Civil Code"), which governed Kentucky Trial Courts for 100 years until replaced by the Rules of Civil Procedure in 1953. Under the Civil Code, a claimant was required to state amounts of damages sought in the initial pleading. Civil Code §90. *See Bringardner Lumber Co. v. Middleton*, 124 S.W.2d 52, 53 (Ky. 1939). Traditionally, the Trial Court would then instruct the jury about the amount claimed. Now claimants are not even allowed to state amounts for unliquidated damages in the initial pleading. CR 8.01(2). Apparently out of habit, we have held on to the practice of giving juries "not to exceed" numbers under the guise of CR 8.01(2). But that rule says nothing about jury instructions; it rather limits recovery by way of interrogatory answers regardless of what a jury may award.

Our neighboring states have expressed valid criticism of this "not to exceed" practice. *See, e.g.*, *Simmons v. Adams*, 121 S.E.2d 379 (Va. 1961); *Bales v. Kansas City Public Service Co.*, 40 S.W.2d 665 (Mo. 1931). The practice may mislead the jury to the extent that it implies the Trial Court endorses a verdict up to the specified amount. The Trial Court should not in this way comment on the sufficiency of the evidence of damages. But as the practice continues, without apparent justification, it may be better practice to at least include the qualifier, "the amount claimed," to clarify that it is the maximum amount claimed by the plaintiff. In *Bales*, *supra*, the Trial Court added the following language to explain the instruction: "Naming the amount sued for in this instruction should not influence you in arriving at a verdict, or its amount, if any, and is mentioned herein only for the purpose of informing you of the amount for which plaintiff has sued." *Id.* at 669. No qualifying phrase was used by the Trial Court in the present case.

-27-

264 (2019), in which the Supreme Court of Connecticut held that a spousal loss of consortium award in a wrongful death action presumptively should not be substantially greater than the wrongful death award. *Id.* at 264. The Connecticut court held that a rational jury's loss of consortium award ordinarily will be lower than its noneconomic damages award to the decedent's estate. *Id.* at 267. However, that court explained that it was not adopting a blanket rule that a loss of consortium award never can exceed the compensation for the underlying spousal injury.

> Rather, the proposal is simply that we apply a presumption that a direct injury to one spouse is no less harmful, everything considered, than the concomitant loss of consortium suffered by the deprived spouse, insofar as the impaired spouse ordinarily will experience more or less comparable losses of physical and emotional affection, in addition to being the one who suffers all of the direct effects of the injury itself. That presumption can be overcome, however, by evidence that the marriage was an unequal one, in which the deprived spouse relied more heavily on the support of or derived far more satisfaction than the impaired spouse, or that the impaired spouse somehow had less to lose.

*Id.* at 268.

In support of this rule, the Court in *Ashmore* cited cases suggesting that other jurisdictions have adopted this rule. However, the cited cases do not stand for such a broad proposition. The Eighth Circuit, applying Missouri law, merely held that a consortium award that was more than five times the underlying

-28-

compensatory award was likely excessive. *Kingman v. Dillard's, Inc.*, 721 F.3d 613, 620 (8th Cir. 2013). However, the Court emphasized that the excessiveness inquiry turned on the evidence presented in the particular case. *Id.* at 621-22. Likewise, the Fifth Circuit noted that, while comparing damage awards in similar cases is helpful in determining whether a particular award is excessive, each case depends on its own facts. *Wheat v. United States*, 860 F.2d 1256, 1259 (5th Cir. 1988).[10]

Kentucky has never adopted this rule or presumption, and we find no basis to do so in this case. Indeed, our Supreme Court has cautioned that, "[w]here there is no statutory presumption, one should not be judicially inferred." *Neidlinger v. Neidlinger*, 52 S.W.3d 513, 523 (Ky. 2001), *overruled on other grounds by Smith v. McGill*, 556 S.W.3d 552 (Ky. 2018). Furthermore, the assessment of damages is a matter left in the hands of the jury, and their decision should be disturbed only in the most egregious circumstances. *Childers Oil Co. v. Adkins*, 256 S.W.3d 19, 28 (Ky. 2008), *abrogated on other grounds by Nami Res. Co., LLC v. Asher Land & Min., Ltd.*, 554 S.W.3d 323 (Ky. 2018).

---

[10] The *Ashmore* Court also cited to *Rascop v. Nationwide Carriers*, 281 N.W.2d 170, 171 (Minn. 1979). However, that case concerned whether an employer was entitled to a credit against workers' compensation for the employee's settlement with a third-party tortfeasor. The Minnesota Supreme Court held that the employer was not entitled to a credit for the consortium award as long as the apportionment of the settlement recovery for loss of consortium was reasonable and not patently arbitrary. *Id.* at 173. The issue in *Rascop* is clearly distinct from the excessiveness inquiry in either *Ashmore* or the current case.

A consortium award that is substantially disproportionate to the compensatory award may merit closer scrutiny. But the consortium award in this case was only 1.39 times the total compensatory award, and 2.4 times the award for Ralph Holbrook's pain and suffering. Although this award is subject to review for excessiveness, we do not presume it excessive as a matter of law.

As noted, Valhalla filed a CR 59 motion to amend the judgment or for a new trial claiming that the jury's award for loss-of-consortium was excessive. Upon such a motion, "the trial court is charged with the responsibility of deciding whether the jury's award appears to have been given under the influence of passion or prejudice or in disregard of the evidence or the instructions of the court." *Burgess v. Taylor*, 44 S.W.3d 806, 813 (Ky. App. 2001) (internal quotation marks and citations omitted). This Court will not step "'into the shoes of the trial court to inspect the actions of the jury . . . . [Rather], the appellate court reviews only the actions of the trial judge . . . to determine if his actions constituted an error of law.'" *Gersh*, 239 S.W.3d at 574 (quoting *Burgess*, 44 S.W.3d at 813). In other words, this Court will not "substitute our judgment on excessiveness . . . for [the trial court's] unless clearly erroneous." *Id.* (citation omitted).

Apart from the size of the award, Valhalla contends that loss of consortium is derivative of the injured party's bodily injury claim. *Daley v. Reed*, 87 S.W.3d 247, 248-49 (Ky. 2002). But in *Daley*, the issue was whether

-30-

consortium claims were subsumed within the coverage limits of an automobile liability policy. Our Supreme Court held that the loss of consortium claims were derivative of the wrongful death claim of their mother's estate and fall within the "each person" limit of the policy. *Id.* at 250. The Court was addressing a coverage issue, not an excessiveness inquiry.

At trial, Dianne Holbrook testified extensively about her relationship with Ralph Holbrook. She emphasized their long and happy marriage and enjoyment of activities together. Diane Holbrook further testified that, before the hip fracture, Ralph Holbrook mowed the grass, sawed and picked up tree limbs after storms, and worked extensively around the house and yard. Diane Holbrook testified that she had to hire outside help to perform these tasks. In addition, Ralph Holbrook was the primary driver in the family, taking her to most activities outside the home. After the fall, Dianne Holbrook lost friendships and social activities because they were not a mobile couple. Dianne Holbrook also testified that Ralph Holbrook vastly changed after the fall, and she spent much of her time caring for his needs. He remained in this condition until his death over two years later.

A claim for loss of consortium includes the right to the services, assistance, aid, society, companionship, and conjugal relationship between husband and wife, or wife and husband. KRS 411.145. The adoption of this statute overrules contrary language in *Kotsiris v. Ling*, 451 S.W.2d 411, 412 (Ky. 1970)

-31-

holding that there is no right of recovery for nursing services rendered or to be rendered to the husband by the wife. *Id.* at 412.[11] And contrary to Valhalla's argument, a spouse's claim for loss of consortium includes the loss of the household services of the wife or husband. *Schulz v. Chadwell*, 558 S.W.2d 183, 188 (Ky. App. 1977) (citing *Beauchamp v. Davis*, 309 Ky. 397, 217 S.W.2d 822, 825 (1948)).

Under the circumstances, we cannot conclude that the jury's award appears to have been given under the influence of passion or prejudice or in disregard of the evidence or the instructions of the Trial Court. "Loss of consortium . . . does not lend itself to simple quantification. The entire inquiry rests on a speculative premise: the value of the decedent's affection." *Louisville SW Hotel, LLC v. Lindsey*, 636 S.W.3d 508, 519 (Ky. 2021). The jury is uniquely qualified to make such determinations, and "[i]f the verdict bears any reasonable relationship to the evidence of loss suffered, it is the duty of the trial court and this Court not to disturb the jury's assessment of damages." *Hazelwood v. Beauchamp*, 766 S.W.2d 439, 440 (Ky. App. 1989). In this case, there was substantial evidence about the effect of Ralph Holbrook's injury on Diane Holbrook. Although loss of

---

[11] The statute also extends consortium damages beyond the death of the injured spouse. *Martin v. Ohio Cnty. Hosp. Corp.*, 295 S.W.3d 104, 107 (Ky. 2009). However, the jury in this case specifically made no award for Diane Holbrook's loss of consortium following Ralph Holbrook's death.

consortium is difficult to quantify precisely, the jury is tasked with that decision. The jurors were uniquely and properly free to decide that Ralph Holbrook's "value" to his wife was substantially more than the "value" of his own, personal pain and suffering to him. Furthermore, the jury awarded Diane Holbrook substantially less in damages for loss of consortium than the instructions allowed. The Trial Court likewise concluded that the verdict was neither manifestly against the weight of the evidence nor the result of passion or prejudice. We find no basis to disturb that conclusion.

## IV. Conclusion

Accordingly, in Appeal No. 2022-CA-1279-MR, we reverse the judgment of the Jefferson Circuit Court as it relates to PGI. This matter is remanded for entry of a final judgment dismissing with prejudice any claims that the Estate asserted previously against PGI. However, the dismissal shall be without prejudice to any collection claims that may arise against PGI following entry of the judgment. In Appeal No. 2022-CA-1396-MR, we affirm the judgment of the Jefferson Circuit Court as it relates to Valhalla.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANT PROVIDENCE
GROUP, INC.:

Bethany A. Breetz
Louisville, Kentucky

BRIEFS FOR APPELLANT LAKE
FOREST POST ACUTE, LLC:

Scott A. Davidson
Rod D. Payne
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLANT LAKE FOREST POST
ACUTE, LLC:

Scott A. Davidson
Louisville, Kentucky

BRIEF FOR APPELLEES:

Chadwick N. Gardner
John C. Grey, II
Prospect, Kentucky

John C. Robinson
Benjamin Salyers
Shelbyville, Kentucky

Kevin C. Burke
Jamie K. Neal
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEES:

Chadwick N. Gardner
Prospect, Kentucky